# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RAYFAEL ROMAN,**<br>   **Defendant.** | Crim. No. 18-489 (KM)<br><br><br>OPINION |

The defendant, Rayfael Roman, pled guilty to a criminal Information charging that, from September 2017 through February 7, 2018, he conspired to distribute and possess with intent to distribute 500 grams or more of cocaine, contrary to 21 U.S.C. § 841(a) & (b)(1)(B), in violation of 21 U.S.C. § 846. A presentence report was prepared in which he was found, based on prior drug convictions, to be a career offender. See U.S.S.G. § 4B1.1.

Defense counsel lodged a number of objections to the Probation Office's Guidelines calculation, and briefed those objections in a sentencing memorandum to the court. (See DE 20 (submission notice).) The government filed a letter brief in opposition (DE 21 (submission notice)).

On February 13, 2019, the date originally scheduled for sentencing, I heard oral argument on the Guidelines issues. (See DE 22 (minutes).) Because the issues were somewhat complex and merited discussion in a written opinion, I reserved decision and adjourned sentencing until February 20, 2019, at 11 a.m. In the interim, the government filed a supplemental letter brief (DE 23), to which the defendant filed a letter response (DE 24). This Opinion is filed in advance of sentencing, for the guidance of the parties.

### A. Applicability of Career Offender Guideline, U.S.S.G. § 4B1.1

(a)  A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at

least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).[1] For these purposes, a "controlled substance offense" is one under a law which "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance, . . . or possession with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

The Career Offender Guideline boosts the otherwise applicable offense level and provides that the Criminal History Category shall in all cases be VI:

(b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

OFFENSE STATUTORY MAXIMUM   OFFENSE LEVEL*

(1) Life   37

(2) 25 years or more   34

. . . .

*If an adjustment from §3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

U.S.S.G. § 4B1.1(b) and text following.

Because Mr. Roman's offense of conviction carries a maximum sentence of 40 years' imprisonment, the PSR's application of the Career Offender guideline resulted in a base offense level of 34. The adjusted offense level of 31, together with the mandatory criminal history category of VI, would yield an imprisonment range of 188 to 235 months.

---

[1] Without objection, the Probation Office employed the 2016 Guidelines manual.

### i.   21 U.S.C. § 846 conspiracy as a "controlled substance offense"

One of the three numbered prerequisites for application of the Career Offender Guideline is that "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a) (quoted above). A "controlled substance offense" is an offense that (1) is punishable by a term of imprisonment that exceeds one year and (2) "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b).

Mr. Roman contends that his offense of conviction, a conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, does not properly fall within the definition of a "controlled substance offense" and is therefore ineligible for application of the Career Offender Guideline.

#### (a) Validity of definition in commentary

There is no dispute that the *substantive* offense of distribution or possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a), is a "controlled substance offense." *See* U.S.S.G. § 4B1.2(b) (quoted *supra*). That commonsense conclusion is corroborated by the enabling statute that is the source of the Career Offender Guideline. That statute instructs the Commission to promulgate a guideline that applies to, *inter alia*, "an offense described in section 401 of the Controlled Substances Act (21 USC 841) . . . ." 28 U.S.C. § 994(h)(1). The substantive § 841 offense, however, is not Roman's offense of conviction; he pled guilty to a § 846 conspiracy having the § 841(a) offense as its object.

No less an authority than Judge William Pryor, the acting chair of the Sentencing Commission, has authored an opinion holding that the word "prohibits" in the definition of a controlled substance offense must be read broadly. "Prohibit," he wrote, means not only to forbid by statute; it also means to "prevent" or "hinder." *United States v. Lange*, 862 F.3d 1290, 1295 (11th Cir.

3

2017) (citing Oxford English Dictionary and Webster's Second International Dictionary). It follows that a controlled substance offense "cannot mean only offenses that forbid conduct outright, but must also include related inchoate offenses that aim toward that conduct." *Id.* For example, "[a] ban on conspiring to manufacture drugs hinders manufacture even though it will ban conduct that is not itself manufacturing." *Id.* Likewise, the § 846 conspiracy provision is aimed to hinder the object of such a conspiracy, *i.e.*, the distribution or possession with intent to distribute narcotics.

It is not necessary, however, to resort to the dictionary, or to indirect arguments. The commentary to the Career Offender Guideline fills the gap left by the Guideline's failure to mention conspiracy offenses. Application note 1 of the commentary to U.S.S.G. § 4B1.2 defines a "controlled substance offense" to include "aiding and abetting, conspiring, and attempting to commit such [drug or violent] offenses." *Id.*

A question remains as to whether the definition in the Guideline commentary is valid—*i.e.*, whether its inclusion of a drug conspiracy, which is not explicitly named in the enabling legislation or even the Guideline itself, is *ultra vires*. That question has split the courts of appeals:

> The circuit courts are sharply divided on the question of whether a drug conspiracy conviction can be included as one of the predicate offenses to establish a career offender status under U.S.S.G. § 4B.1. *Cf. United States v. Price*, 990 F.2d 1367 (D.C.Cir.1993); *United States v. Mendoza-Figueroa*, No. 93-2867 (8th Cir. June 27, 1994) and *United States v. Bellazerius*, No. 93-3157 (5th Cir. June 17, 1994), holding that conspiracy conviction cannot be included, with *United States v. Heim*, 15 F.3d 890 (9th Cir.1994); *United States v. Damerville*, No. 93-3235 (7th Cir. June 14, 1994), and *United States v. Hightower*, No. 93-5117 [25 F.3d 182] (3d Cir. May 31, 1994), holding that conspiracy conviction can be included.

*United States v. Bryan*, 35 F.3d 567 (6th Cir. 1994) (remanding for district court consideration of the issue).

The split has become more lopsided in the government's favor, though; other cases holding that a conspiracy conviction is properly treated as a

4

"controlled substance offense" under this Guideline include *United States v. Piper*, 35 F.3d 611, 618–19 (1st Cir. 1994); *United States v. Jackson*, 60 F.3d 128, 132–33 (2d Cir. 1995); *United States v. Kennedy*, 32 F.3d 876, 888–90 (4th Cir. 1994); *United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995); *see also United States v. Mendoza-Figueroa*, 65 F.3d 691, 694 (8th Cir. 1995) (en banc) (holding that Sentencing Commission's decision to include conspiracies to commit controlled substance offenses under career offender guideline was within statutory authority).

The U.S. Court of Appeals for the Third Circuit sits on the pro-government side of the split. *See United States v. Hightower*, 25 F.3d 182 (3d Cir. 1994). *Hightower* recognizes that the Commission's authority to promulgate guidelines is circumscribed by statute. Guidelines commentary, the Court said, is further circumscribed, in that its function is solely "to (1) explain or interpret the guidelines, (2) suggest circumstances warranting departure from the guidelines and (3) provide background information on the guidelines." *Id.* at 185. Thus, to simplify a bit, there is an ordered hierarchy from statute to guideline to commentary. The statute controls over a conflicting guideline; the guideline controls over a conflicting comment or application note.

On the statutory/guideline issue, *Hightower* examined the text and legislative history and held that 28 U.S.C. § 994(h) was intended to be a floor, not a ceiling, for the definition of a "controlled substance offense." With approval, it cited authority to the effect that § 994(h) was not the sole source of the Commission's authority, and that "[t]he Commission's decision to go beyond the mandate of § 994(h) is also consistent with the legislative history to § 994(h)." 25 F.3d at 186–87 (quoting *United States v. Heim*, 15 F.3d 830, 832 (9th Cir.1994)). The Commission, *Hightower* held, could add non-listed offenses to the definition of a controlled substance offense without creating a fatal clash with the statute.

On the guideline/commentary issue, *Hightower* held that application note 1 did not clash with the Guideline itself:

5

> We think that the commentary's expansion of the definition of a controlled substance offense to include inchoate offenses is not "inconsistent with, or a plainly erroneous reading of" § 4B1.2(2) of the Sentencing Guidelines, and that it does not "violate[ ] the Constitution or a federal statute." [citing *Stinson v. United States*, 508 U.S. 36, 113 S. Ct. 1913, 1915 (1993)]. This commentary explains how the guideline should be applied, and we therefore hold that it is binding. The commentary to § 4B1.1, however, is not explanatory or interpretive; rather, this commentary simply provides background information on the career offender guideline. We decline to interpret the commentary to § 4B1.1 in a way that is contrary to the text and legislative history of 28 U.S.C. § 994(h), and which would nullify the commentary to § 4B1.2.

*Hightower*, 25 F.3d at 187.

*Hightower* therefore upheld the application of the Career Offender Guideline to a conviction of conspiracy to distribute cocaine base, contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846. As a district court within the Third Circuit, I am "bound by the rule of *Hightower*, and petitioner's claim is rejected." *Nwachia v. United States*, 891 F. Supp. 189, 201 (D.N.J. 1995) (Barry, D.J.), *aff'd*, 77 F.3d 463 (3d Cir. 1996).[2]

I am constrained to hold that application note 1 includes, and validly so, a controlled-substance conspiracy within the definition of a controlled-substance offense.

### (b) Overt act and "categorical approach"

Roman makes a related but distinct argument that is specific to 21 U.S.C. § 846. Under the so-called "categorical approach" to predicate offenses, he says, a § 846 conspiracy does not qualify as a controlled substance offense.

---

[2] On this issue, the courts of appeals have been fairly quiet in recent years. This may reflect the Sentencing Commission's decision, in 1995, to address the circuit split concerning § 846 conspiracies as predicates for Career Offender treatment. Amendment 528 (*see* U.S.S.G. Appendix C) specifically cited *Hightower, supra*, and similar authorities in the course of re-promulgating application note 1, explicitly stating that inchoate offenses are included.

More recent cases reaffirming the relevant Circuits' holdings of the 1990s have included *United States v. Jackson*, 909 F.3d 922, 924–25 (8th Cir. 2018); *United States v. Bams*, 858 F.3d 937, 946 (5th Cir. 2017).

6

Because a § 846 conspiracy does not require an overt act, it is broader than the generic offense of a conspiracy and does not fit within the "categorical" definition of a conspiracy.

The "categorical approach" arose in the context of various recidivist or sentencing-enhancement provisions. It addresses the recurring problem of whether to include a generically described offense (such as a "controlled substance offense" or a "crime of violence") as a relevant prior conviction. Particularly when the prior offense is one under state law, mere labels do not suffice; our system of federalism means that offenses with similar names may not in fact be similar under the federal system and the laws of 50 states. Thus in *Taylor v. United States*, the Supreme Court stressed that the court must determine whether the defendant "has been found guilty of all the elements" of the described offense. 495 U.S. 575, 599, 110 S. Ct. 2143 (1990). With regard to undefined enumerated offenses, a court will look to the "generic, contemporary meaning" of the crime, which will typically correspond to the "sense in which the term is now used in the criminal code of most states." *Id.* at 598. The point of this inquiry is to ensure that the *elements* (not the particular underlying facts) of the actual offense of conviction are no broader than those of the generic enumerated offense. *See id.* at 602.[3] More recently, the U.S. Supreme Court confirmed the *Taylor* "elements-only" approach in *Mathis v. United States*, 136 S. Ct. 2243 (2016).

The categorical approach has been usefully summarized as follows:

> Under the categorical approach, "we look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Moncrieffe v. Holder*, — U.S. —, 133 S. Ct. 1678, 1684, 185 L.Ed.2d 727 (2013) (quoting *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 186, 127 S. Ct. 815, 166 L.Ed.2d 683 (2007)). The "generic"

---

3    *Taylor* was discussing whether a conviction for "burglary" qualified as one of three prior convictions of a violent felony for purposes of the sentencing enhancement in 18 U.S.C. § 924(e) (possession of firearm by felon), part of the Armed Career Criminal Act ("ACCA").

7

definition of an offense is determined by "the contemporary usage of the term." *Taylor*, 495 U.S. at 592, 110 S. Ct. 2143. "[A] state offense is a categorical match [with a generic federal offense] only if a conviction of the state offense " 'necessarily" involved ... facts equating to [the] generic [federal offense].' " *Moncrieffe*, 133 S.Ct. at 1684 (some alterations in original) (quoting *Shepard v. United States*, 544 U.S. 13, 24, 125 S. Ct. 1254, 161 L.Ed.2d 205 (2005) (plurality opinion)). That is, "an offense is an aggravated felony if 'the full range of conduct covered by the [state criminal statute] falls within the meaning' of the relevant definition of an aggravated felony." *Ngaeth v. Mukasey*, 545 F.3d 796, 800 (9th Cir.2008) (per curiam) (quoting *Penuliar v. Mukasey*, 528 F.3d 603, 608 (9th Cir.2008), *abrogated on other grounds as recognized in United States v. Martinez*, 771 F.3d 672, 677–78 (9th Cir.2014)). By contrast, where the state statute of conviction "sweeps more broadly than the generic crime, a conviction under the law cannot count as an [aggravated felony], even if the defendant actually committed the offense in its generic form." *Descamps v. United States*, ––– U.S. ––––, 133 S. Ct. 2276, 2283, 186 L.Ed.2d 438 (2013).

United States v. Garcia-Santana, 774 F.3d 528, 533–34 (9th Cir. 2014).[4]

United States v. Glass, 904 F.3d 319, 321–22 (3d Cir. 2018), cert. denied, No. 18-6748, 2019 WL 113432 (U.S. Jan. 7, 2019), is illustrative. There, the Court of Appeals applied the *Taylor/Mathis* categorical approach in the context of the Career Offender Guideline. The Career Offender Guideline, mirroring substantive federal law (see 21 U.S.C. §§ 841(a), 959, 960), defines a controlled substance offense as one under a law which "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance, . . . or possession with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). In *Glass*, the defendant's convictions under a Pennsylvania statute had been treated by the district court as predicate "controlled substance offenses" for purposes of the Career Offender Guideline. The Pennsylvania statute, said the defendant, swept so broadly as to include a

---

[4] *Garcia-Santana* discussed the categorical approach in relation to the parallel requirement of an "aggravated felony" under immigration law.

mere "offer to sell" drugs. While not deciding the issue, *Glass* assumed *arguendo* the validity of cases from other Circuits holding that state statutes criminalizing mere "offers to sell" narcotics swept more broadly than the Guideline, and hence could not be treated as controlled substance offenses under the categorical approach.

But this Pennsylvania statute, the *Glass* court held, did not cross the line. That state statute, in language similar to that of the Guideline, prohibited "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance ... or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." *Id.* at 322 (quoting 35 Pa. Cons. Stat. § 780-113(a)(30)). Arguing that the statute criminalized mere "offers to sell," the defendant pointed to the state-law definition of "delivery," which included "the actual, constructive, or attempted transfer" of a controlled substance. *Id.* (quoting 35 Pa. Cons. Stat. § 780-102(b)). The *Glass* court was unconvinced. Among other things, it noted, the federal-law definition of "delivery" was essentially identical, so the state offense, in criminalizing attempts, would not exceed the bounds of the federal one. *Id.* (citing 21 U.S.C. § 802(8)).[5]

Citing, *inter alia*, *Glass*, Roman argues that his conspiracy offense of conviction, 21 U.S.C. § 846, does not satisfy the test of the "categorical approach." There is a well-settled consensus, he says, as to the offense of conspiracy. The general offense of conspiracy to violate a federal statute requires, in addition to agreement, an overt act in furtherance of the plan. 18 U.S.C. § 371 (requiring "act to effect the object of the conspiracy"). Complicating the federal picture, "[a]t least fifteen federal conspiracy provisions for nonviolent crimes require an overt act, while at least ninety-nine do not." *United States v. McCollum*, 885 F.3d 300, 306 (4th Cir. 2018) (citing *United States v. Pascacio-Rodriguez*, 749 F.3d 353, 360 (5th Cir. 2014) (surveying

---

5   The Court also noted that a separate Pennsylvania statute explicitly covered offers to sell, which tended to confirm that this statute did not.

9

statutes)). Under the law of a majority of states, the general offense of conspiracy requires an overt act. *See United v. Garcia-Santana*, 774 F.3d 528, 534–35 (9th Cir. 2014) (General conspiracy statutes of 36 states require an overt act); W. LaFave, Substantive Criminal Law § 12.2(b) (3d ed. 2017) (overt act required by conspiracy laws of "most of the states").

The federal offense of conspiracy to commit a drug distribution offense does not require an overt act. *See* 21 U.S.C. § 846; *United States v. Bey*, 736 F.2d 891, 893–94 (3d Cir. 1984) (holding that § 846 does not require overt act, and that the Constitution does not independently require an overt act). Section 846 therefore criminalizes a broader range of conduct than does the conspiracy offense in its categorical form, which does require an overt act. Roman urges that, like the state statutes criminalizing mere "offers to sell" narcotics discussed in *Glass*, a § 846 conspiracy exceeds the bounds of the "categorical" conspiracy offense, and therefore falls outside the scope of the Career Offender guideline.

Once again, Mr. Roman invokes one side of a Circuit split. His argument finds support in *United States v. Martinez-Cruz*, 836 F.3d 1305, 1307 (10th Cir. 2016) (prior conviction of § 846 conspiracy, because it does not require an overt act, does not qualify as controlled substance offense under categorical approach), and *United States v. McCollum*, 885 F.3d at 309 (Fourth Circuit holding that a prior conviction of conspiracy to commit murder in aid of racketeering, *see* 18 U.S.C. § 1959(5), because it did not require overt act, did not qualify as a crime of violence for purposes of a sentencing enhancement under U.S.S.G. § 2K2.1(a)(4)(A)).

A position like that of Mr. Roman position was rejected, however, in *United States v. Rivera–Constantino*, 798 F.3d 900 (9th Cir. 2015) (holding prior conviction of conspiracy under 21 U.S.C. § 846 was a controlled substance offense under definitional language of U.S.S.G. § 2L1.2),[6] and *United States v.*

---

6   U.S.S.G. § 2L1.2 is similar to the Career Offender Guideline for these purposes. Its commentary, like that of the Career Offender Guideline, defines a drug trafficking offense in terms of, *inter alia*, distribution and possession with intent to distribute a

10

*Pascacio–Rodriguez*, 749 F.3d 353 (5th Cir. 2014) (expressing doubt as to application of categorical approach where Guidelines language was clear, but nevertheless performing categorical analysis to find that prior conviction of conspiracy to commit murder was a crime of violence).[7]

I adopt the position of the Ninth and Fifth Circuits that a conspiracy is included in the Guidelines definition.

First, I must take as my starting point the holding of *United States v. Hightower*, 25 F.3d 182 (3d Cir. 1994), that a § 846 conspiracy offense is a prior controlled substance conviction for purposes of the Career Offender Guideline. It does not appear that the "categorical approach" argument was presented to the Court when it decided *Hightower*. Still, the categorical approach had been established by the 1990 Supreme Court case of *Taylor*, *supra*, and the Court of Appeals must be presumed to have been aware of it. The defendant's argument may be that subsequent case law elaborating the categorical approach has undermined the vitality of *Hightower*. *Hightower* has not been overruled, however. As a district court judge, I am bound to faithfully apply the letter and spirit of Court of Appeals precedent; except in a clear case of superseding authority, it is for the Court of Appeals, not me, to overrule or limit its precedents.

Second, I am persuaded by the reasoning of the Ninth and Fifth Circuits that § 846 is encompassed by the definition of a controlled substance offense, despite its lack of an overt act requirement:

> To hold otherwise would be to conclude that the Sentencing Commission intended to exclude federal drug trafficking conspiracy offenses when it used the word "conspiring" to modify

---

controlled substance, and states that it shall include attempts and conspiracies. *Id.* comment., app. Notes 1 & 5.

[7] Mr. Roman's supplemental memorandum (DE 24 at 2) quotes a Department of Justice letter memorandum to Judge Pryor in his capacity as Acting Chair of the Sentencing Commission. (DE 24 Ex. B (pp. 7–24)) Unlike the defendant, I do not read this as a concession that § 846 is not a controlled substance offense; rather it is an acknowledgement of a split in the circuits and a proposal that the split be resolved by amendment to the Guidelines.

11

the phrase "drug trafficking offenses." Such a result would be not just marginally "underinclusive," as the results of the categorical approach sometimes are, *Moncrieffe v. Holder*, —U.S. —, 133 S. Ct. 1678, 1692, 185 L.Ed.2d 727 (2013), but downright absurd. Why would the Sentencing Commission intend to exclude from the term "drug trafficking offenses" a federal conviction for a drug trafficking offense under federal law? Congress has decided not to require an overt act as an element of federal drug conspiracy, and we have no reason to conclude that the Sentencing Commission intended to abrogate that decision. Indeed, to adopt such an interpretation would run counter to basic notions of common sense. "[I]n the course of the application of the [S]entencing [G]uidelines, as in the application of any legal concept, the use of 'common sense' is more than just relevant, but required." *United States v. White*, 903 F.2d 457, 462 (7th Cir. 1990). We reject Rivera–Constantino's reading of section 2L1.2(b)(1) because "[c]ourts ought not read the Guidelines in a way that makes the Sentencing Commission look foolish." *United States v. Turner*, 998 F.2d 534, 538 (7th Cir. 1993).

*United States v. Rivera-Constantino*, 798 F.3d 900, 904–05 (9th Cir. 2015). It makes little sense to apply the categorical approach, a judicially-fashioned mode of interpretation, in derogation of what the Commission actually enacted, in conformity with substantive federal law.

A section 846 conspiracy, which does not require an overt act, is just about the only kind of conspiracy to distribute narcotics that currently exists and is charged under federal law.[8] That basic reality is right in the wheelhouse

---

[8] In my experience, conspiracies to distribute narcotics are invariably charged under § 846. Conspiracies to manufacture and import narcotics, contrary to 21 U.S.C. §§ 959 and 960, are charged under the similarly-worded 21 U.S.C. § 963, which likewise lacks an overt act requirement. Once drug conspiracies, like others, were charged under the general conspiracy provision, 18 U.S.C. § 371. However, since the overhaul of the nation's drug laws starting in 1970, and the enactment of the Title 21 offenses in their modern form, there have been few if any such prosecutions. The drug-specific conspiracy provisions, 21 U.S.C. §§ 846 and 963, have superseded 18 U.S.C. § 371 in this area. *Cf. United States v. Mori*, 444 F.2d 240, 245 (5th Cir. 1971) (noting, in connection with sentencing, that "the catchall provisions of [18 U.S.C. § 371] section became subsumed under the particular, specific provisions of [former 21 U.S.C. § 174, now 21 U.S.C. § 963]."

of the Commission, which surely was aware of it. Defendant Roman's reading of the Guideline would write federal-law drug conspiracies out of the Guideline. The Commission, however, wrote such conspiracies *into* the Guideline. U.S.S.G. § 4B1.2, comment., app. Note 1; *Hightower, supra*. It cannot have meant, in the name of including state-law conspiracies, to exclude virtually all federal-law conspiracies. The Commission's right and left hand cannot have been so ignorant of each other.

If the wording of the Sentencing Guideline required the result that *Rivera-Constantino* called "absurd," I might feel obligated to follow. But it doesn't. For the reasons expressed above, the literal wording of application note 1, as well as the broad construction of the term "prohibits," lead to the opposite conclusion.[9]

---

[9] I add some relevant, if not dispositive, observations, if only to suggest to the Commission that amendment to resolve the circuit split in favor of inclusion of conspiracy offenses would be salutary. Consider how the Guideline, as interpreted by the defendant, would operate in this case.

Defendant proposes to tear the categorical approach from the context that gave rise to it. I recognize that the definition of a "controlled substance offense" applies across the board. *See* U.S.S.G. § 4B1.2(b). Nevertheless, we do not have here a generically described offense that may encompass a wide variety of statutes and behaviors. This is not a case in which state statutes of conviction must be interpreted and reviewed for conformity with federal standards. On the contrary, this is a conviction of a *federal*-law conspiracy to violate the *federal* controlled substance laws. *See* 21 U.S.C. §§ 841(a), 846.

Nor is this a case in which the court must take at face value a prior conviction, for fear of having, in every case, to litigate the character of that prior conviction. The conviction at issue here is not, as in all of the cited case law, a *prior* predicate conviction; it is the *current* offense of conviction, the one as to which the court is imposing sentence. As to the current offense, the court can and must consider all of the relevant conduct in order to determine the Guideline range. *See generally* U.S.S.G. § 1B1.3 (relevant conduct includes, *e.g.*, all actions aided and abetted by the defendant, all reasonably foreseeable jointly undertaken activity in the course of the offense of conviction). It makes little sense for the court, having ordered a presentence investigation and considered all the circumstances, to then close its eyes to what it has learned and is required by the Guidelines to consider.

Here, there was no objection to the factual recitation in the PSR, which reveals that Roman was charged based on the agents' seizure of 2.5 kilograms of cocaine, a scale, and $30,000 in currency from Roman's Jersey City apartment. (PSR ¶ 16) The defendant's guilty plea took place before me in open court. Under oath, the defendant admitted that he telephoned a coconspirator and arranged for a pickup of the drugs

13

For the reasons stated above, I hold that the offense of conviction, a conspiracy under 21 U.S.C. § 846, is eligible for application of the Career Offender Guideline.

### B. Other Issues

I briefly note my rulings on other sentencing issues raised by the defendant.

#### i. Drug-premises adjustment

The PSR recommends application of a 2-level enhancement to the offense level for "maintaining a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). Mr. Roman objects that the primary purpose of the Jersey City apartment was to serve as his home. The commentary establishes that there is no such "primary purpose" test: "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant' incidental or collateral uses for the premises." *Id.* comment., app. Note 17. Accordingly, there is no inconsistency between the premises' status as the defendant's home and its use as drug premises. *See, e.g., United States v. Miller*, 698 F.3d 699, 707 (8th Cir. 2012); *United States v. Bell*, 766 F.3d 634, 637 (6th Cir. 2014).

The defendant admitted that this was his apartment. From it, the agents seized 2.5 kilograms of cocaine, a scale, and $30,000 in currency. (PSR ¶ 16) The defendant admitted that he telephoned a coconspirator and arranged for a pickup of the drugs from the apartment. A finder of fact could, and I do, conclude that what the agents found was a snapshot of the activities in the apartment, which the defendant maintained as drug premises.

---

from his apartment. He admitted that the items in his apartment belonged to him. In short, the defendant's guilty plea was an admission of *actual* possession of the drug with intent to distribute it, and affirmative acts in furtherance of that plan, not just a bare agreement to do so. In such a case, it makes little sense to exclude this conviction from the operation of the Career Offender Guideline.

The challenge to the 2-level adjustment is denied.

### ii. "Single sentence" rule

The defendant asserts that two of his prior controlled-substance convictions should be treated as a single sentence for purposes of his criminal history. The first arose from a Hudson County arrest for purchasing crack cocaine on October 17, 2006. The other arose from a Bergen County arrest for sales of small amounts of cocaine on December 29, 2006. On November 30, 2007, he received concurrent sentences of three years' imprisonment for those two offenses. (PSR ¶¶ 42, 43)

Mr. Roman invokes the "single sentence rule," saying that the offenses should not be counted separately because the sentences "were imposed on the same day." U.S.S.G. § 4A1.2(a)(2)(B) (criminal history); see also U.S.S.G. § 4A1.2, comment., app. Note 3 (similar treatment in relation to Career Offender priors). The single sentence rule does not apply, however. "Prior sentences are always counted separately if the sentence were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." U.S.S.G. § 4A1.2(a)(2)(B). See United States v. Ley, 876 F.3d 103, 106 (3d Cir. 2017) (affirming "single sentence rule," but finding that traffic summons is not an intervening "arrest"); United States v. Hightower, 25 F.3d at 183; United States v. Hallman, 23 F.3d 821, 825 n.3 (3d Cir. 1994); see also United States v. Davis, 929 F.2d 930, 934 (3d Cir. 1991) (sentences do not merge merely because they are imposed concurrently).

Here, the arrest for the second offense intervened between the first arrest and the sentencing. The single sentence rule does not apply, and the two offenses were properly counted separately in the PSR.

### iii. 2007 NY misdemeanor and ten-year lookback period

The PSR assessed one criminal history point based on Mr. Roman's conviction in New York of a misdemeanor assault offense, for which he received a sentence of time served. (PSR ¶ 44). (Counsel represents that the sentence

15

amounted to a single day of confinement.) The incident, a traffic-related altercation, occurred on August 11, 2007; sentencing occurred on November 1, 2007.

The sentence for this prior offense did not exceed one year and one month. The sentence therefore would not be counted if it occurred more than 10 years prior to the "commencement of the instant offense." U.S.S.G. § 4A1.2(e)(2). Mr. Roman argues that this prior misdemeanor sentence did not occur within 10 years, because the "instant offense" commenced in February 2018.

I disagree. The criminal information to which Mr. Roman pled guilty charges a conspiracy running from September 2017 through February 7, 2018. In his guilty plea colloquy, Mr. Roman was asked "From in or around September 2017 through on or about February 7, 2018, in Jersey City, New Jersey, did you conspire and agree with at least one other person to distribute and possess with intent to distribute cocaine?" He answered in the affirmative.

The "instant offense" commenced in September 2017. The sentence for the 2007 assault occurred in November 2007, within the ten-year lookback period. This prior sentence was therefore properly counted, and the one point was properly assessed.

### iv. 2018 marijuana disorderly persons offense

The PSR assessed one criminal history point for a sentence Mr. Roman received in connection with a marijuana disorderly persons offense in 2018. (PSR ¶ 48) Because that sentence consisted solely of a fine, he argues that it should not be counted. That is incorrect. Except for certain excluded offenses, of which marijuana possession is not one, all prior sentences, including fines, are counted. *See United States v. Buckner*, 155 F. App'x 67 (3d Cir. 2005) (citing U.S.S.G. § 4A1.2(c)(1); *Nichols v. United States*, 511 U.S. 738, 746–49 (1994)). The PSR's assessment of one point for this sentence is upheld.

## CONCLUSION

The PSR's application of the Career Offender Guideline, as well as its calculation of the offense level and Criminal History, are upheld. The defendant remains free, however, to make any appropriate argument as to a departure or variance from the resulting sentencing range.

_____
**KEVIN MCNULTY, U.S.D.J.**